IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESLEY A. SNYDER, : | |
|     Petitioner : | |
| : | No. 1:07-cr-450 |
| v. : | |
| : | (Chief Judge Kane) |
| UNITED STATES OF AMERICA, : | |
|     Respondent : | |

## MEMORANDUM

Before the Court is Petitioner's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 44.) An evidentiary hearing was held on the motion on October 26, 2012. Following the hearing, the parties submitted supplemental briefing on the motion. The matter is now ripe for disposition. For the reasons that follow, the Court will deny Petitioner's motion.

## I. PROCEDURAL HISTORY

On November 2, 2008, Petitioner Wesley A. Snyder pleaded guilty to one count of mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341, and was sentenced to a 146 month term of imprisonment, three years supervised release, restitution in the amount of $29,267,080, and a $100 special assessment. On July 14, 2008, Petitioner appealed his sentence, arguing that the Court did not adequately consider his age, poor health, history of community service, and lack of malicious intent. The United States Court of Appeals for the Third Circuit affirmed the Court's sentence on July 12, 2010.

On October 17, 2011, Petitioner filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 44.) On October 26, 2012, an evidentiary hearing was held on

1

Petitioner's motion. Following the evidentiary hearing, counsel for Petitioner submitted a brief in support of Petitioner's motion. (Doc. No. 80.) In his brief, Petitioner argues: (1) that his counsel was ineffective for failing to investigate potential defenses; and (2) his counsel was ineffective for failing to explain the elements of the mail fraud offense to which he pleaded guilty, along with the factual basis for the guilty plea. (Id.) The Government submitted a brief in opposition to Petitioner's motion, and Petitioner submitted a reply brief thereto. (Doc. Nos. 82, 83.) Petitioner also submitted a pro se brief in support of his motion. (Doc. No. 81.) Because Petitioner is represented by counsel, the Court will not consider his pro se brief. See United States v. Turner, 677 F.3d 570, 579 (3d Cir. 2012) ("[E]xcept in cases governed by Anders, parties represented by counsel may not file pro se briefs."); United States v. Vampire Nation, 451 F.3d 189, 207 n.17 (3d Cir. 2006).

## II.     FACTUAL BACKGROUND

At the evidentiary hearing, Petitioner Snyder offered testimony in support of his motion. Snyder testified that he developed a mortgage product in the early 1980s known as a wrap-around mortgage. (Doc. No. 79 at 9.) He stated that he sold wrap-around mortgages for 25 years until 2007, when his business started to decline and his company filed for bankruptcy. (Id. at 10-11.) Upon learning that he was the target of a federal criminal investigation, Petitioner Snyder sought the assistance of Emmanuel Dimitriou, a criminal defense attorney. (Id. at 11.) Petitioner Snyder testified that he with met Attorney Dimitriou and his partner Kurt Geishauser on multiple occasions and described his business to them, but that he never told his lawyers that he intended to defraud anyone. (Id. at 16.)

On November 8, 2007, Petitioner Snyder executed a plea agreement, agreeing to enter a

2

plea of guilty to mail fraud charges filed against him. He asserts that he did not see a copy of the criminal information until he signed it, and that he was not made aware of the allegations made against him. (Id. at 22.) He asserts that he was presented with the plea agreement on November 7, 2007, and that on November 8, Attorney Dimitriou told him to sign the agreement or face 800 years in prison. (Id.) Petitioner Snyder further testified that Attorney Dimitriou told him that he would withdraw from the case if he did not sign the agreement. (Id.) Snyder stated that he signed the plea agreement without having the charge of mail fraud explained to him. (Id.)

On November 28, 2007, Petitioner Snyder appeared before the undersigned and pleaded guilty to one count of mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341. (Doc. No. 13.) The Court conducted a thorough plea colloquy, including reading the entire criminal information and explaining the consequences of the plea to Petitioner. The undersigned explained to Petitioner that he was accused of devising a mail fraud scheme to defraud others and that he devised and executed a Ponzi scheme that defrauded over 800 homeowners through his "Wrap-Around Equity Slidedown Discount Mortgage Program." (Doc. No. 16 at 4.) Petitioner testified that nobody had coerced him to enter into the plea agreement, that he had adequate time to discuss the charges with his counsel, and that he was satisfied with his representation by his attorney. (Id. at 12-13, 18.) After the prosecutor read the factual basis for the guilty plea, Petitioner agreed that the facts that the Government alleged were true, and that there were no facts that he disputed. (Id. at 30.)

In the instant Section 2255 motion, Petitioner asserts that his answers at the plea hearing were not truthful. (Doc. No. 80 at 8.) Instead, he asserts that he answered the questions "in the only way that he believed he could avoid an 800 year sentence." (Id.) At the evidentiary hearing

3

on his motion to vacate, Petitioner stated that he did not intend to defraud anyone, that he only agreed to the facts stated in the plea hearing because he was very confused, and that Attorney Dimitrious was telling him what to say. (Doc. No. 79 at 24-25.)

### III. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct the prisoner's sentence. However, Section 2255 does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178 (1979)). "The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (citation omitted). Furthermore, Section 2255 generally limits federal prisoners' ability to attack the validity of their sentences to four grounds. Hill v. United States, 368 U.S. 424, 426-27 (1962). A prisoner may claim relief by alleging that: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. Id. (citing 28 U.S.C. § 2255).

A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The first Strickland prong requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. (citation omitted). In this way,

4

Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. (citing Strickland, 466 U.S. at 688). However, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors." Jermyn, 266 F.3d at 282 (citation omitted). This prong requires Petitioner to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694.) "A defendant alleging ineffective assistance of counsel must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995), cert denied, 516 U.S. 1058 (1996). "Reasonable probability" is defined as "'a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). "A court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

**IV. DISCUSSION**

Petitioner moves to vacate his sentence, arguing: (1) that his counsel was ineffective for failing to investigate potential defenses; and (2) that his counsel was ineffective for failing to explain the elements of the mail fraud offense with which he was charged. (Doc. No. 80 at 11-24.) The Court will address each argument separately.

**A. Failure to Investigate Potential Defenses**

First, Petitioner asserts that Attorneys Dimitriou and Geishauser inadequately investigated the claims and potential defenses in this case. (Doc. No. 80 at 11.) Specifically, he

asserts that his attorneys investigated his case for no more than a month and a half, and did not interview any of Petitioner's employees, salespeople, or customers. Petitioner argues that his lawyers rushed to judgment in this case "without adequately investigating the matter in an effort to distinguish between intentional fraud and horrifically poor business judgment." (Id. at 16.) Petitioner asserts that at the time he signed the plea agreement he "was still unaware of the precise wrongdoing that gave rise to criminal liability but rather was under a general impression that something in the operation of his business was illegal and that he faced 800 years of imprisonment." (Id.)

Attorney Geishauser also testified at Petitioner's evidentiary hearing as to his representation of Petitioner. Geishauser testified that his primary role in the representation of Petitioner was research and investigation. (Doc. No. 79 at 77.) He participated in a proffer interview involving Petitioner and the Government, during which the Government disclosed voluminous records, and during which Petitioner made several admissions. (Id. at 75.) Geishauser testified that he and Attorney Dimitriou determined not to hire a forensic accountant or interview Petitioner's employees or customers because the evidence against Petitioner was "insurmountable," and a guilty plea was in his best interest. (Id. at 75-76.) Geishauser elaborated that his client's own admissions made it "clear that there was no further investigation that we could do that would develop a defense." (Id. at 79.) Specifically, Geishauser testified that Petitioner admitted to sending his customers false statements and lying to his customers for years. (Id. at 80.)

Under the first Strickland prong, Petitioner must establish that his counsel's performance was deficient, meaning that his attorneys' representation fell below an objective standard of

6

reasonableness under prevailing professional norms. Jermyn, 266 F.3d at 282 (citing Strickland, 466 U.S. at 688). Petitioner's argument that his counsel's investigation fell below an objective standard of reasonableness is without merit. Indeed, the right to effective assistance of counsel does encompass counsel's duty to investigate. McAleese v. Mazurkiewicz, 1 F.3d 159, 172 (3d Cir. 1993). However, an attorney's duty to investigate is necessarily altered in a situation where his or her client admits fault. "The reasonableness of counsel's actions may be affected by the defendant's actions and choices, and counsel's failure to pursue certain investigations cannot be later challenged as unreasonable when the defendant has given counsel reason to believe that a line of investigation should not be pursued." United States v. Gray. 878 F.2d 702, 710 (3d Cir. 1989). Here, Petitioner's counsel testified that Petitioner admitted to sending false statements to his customers and lying to them. Upon review of the record in this case, the Court finds Attorney Geishauser's testimony to be credible. In light of the strong presumption that counsel's performance was reasonable, see McAleese, 1 F.3d at 172, and in light of Petitioner's own admission of guilt, the Court declines to hold that Attorneys Dimitriou and Geishauser were ineffective for limiting their investigation to discussions with Petitioner and reviewing evidence presented by the Government.

Moreover, even if Petitioner's counsel's representation fell below an objectively reasonable standard, Petitioner has presented no evidence to support a finding that he was prejudiced by his attorney's alleged insufficient investigation. To meet his burden of proving that he suffered prejudice as required by Strickland, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A defendant alleging ineffective

7

assistance of counsel must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995), cert denied, 516 U.S. 1058 (1996). "Reasonable probability" is defined as "'a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). Petitioner has failed to meet his burden, having presented no evidence in support of a finding that he was prejudiced, instead relying on his bare allegations. Thus, the Court will deny his Section 2255 motion with respect to his argument that his counsel was ineffective for failing to investigate.

### B. Failure to Explain the Mail Fraud Charge

Next, Petitioner argues that his attorneys were ineffective for failing to explain the elements of the mail fraud offense, particularly intent, and the factual basis for his guilty plea to him. (Doc. No. 80 at 19-24.) He asserts that his attorneys never fully advised him of the nature of the charges against him, and that he did not understand that intent was a necessary element of the mail fraud offense. In the evidentiary hearing, Petitioner testified that he first became aware of the meaning of intent just prior to the plea hearing, and that he never discussed the element with his attorneys prior to meeting with the Government and signing the plea agreement. (Doc. No. 79 at 24-25.) Moreover, Defendant appears to argue that he did not voluntarily and intelligently agree to enter a guilty plea. (See Doc. No. 80 at 23.)

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (citing Brady v. United States, 397 U.S. 742 (1970)). In order for the decision to be considered intelligent, a criminal defendant must receive "real notice of the true nature of the charge against him, the first and most

8

universally recognized requirement of due process." Smith v. O'Grady, 312 U.S. 329, 334 (1941). A guilty plea is considered voluntary if it is "entered by one fully aware of the direct consequences, . . . unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady, 397 U.S. at 755 (citation and quotation marks omitted).

While Petitioner testified at the evidentiary hearing, years after he entered a plea of guilty, that he was not aware that the charges against him required an element of intent until Attorney Dimitriou informed him just prior to the plea hearing (Doc. No. 79 at 24), the Court does not credit this testimony. Petitioner's representation that he was unaware that he was charged with a crime that involved an element of intent flies in the face of common sense, as well as the record in this case. For example, at the evidentiary hearing on Petitioner's Section 2255 motion, Petitioner admitted to lying to his customers. (See, e.g., Doc. No. 79 at 31.) Such an admission clearly indicates an intent to defraud customers. Moreover, Petitioner – a sophisticated businessman with vast experience in financial affairs – was charged with the crime of mail fraud. It surely came as no surprise to Petitioner that an element of intent was involved in the crime of mail fraud, as the word "fraud" signals an intentional deception or misrepresentation. Finally, at the plea hearing, the Court carefully reviewed the criminal information, which alleged that Petitioner devised and executed a Ponzi scheme, defrauding 811 homeowners. (Doc. No. 16 at 2-10.) The Court reminded Petitioner of the potential penalties, and that he had the right to plead not guilty. (Id. at 10.) The Court specifically asked Petitioner whether anyone coerced him to enter a plea of guilty, to which he answered in the negative. (Id.

9

at 18.) After the Government recited several pages of factual allegations against Petitioner, Petitioner stated that there were no facts that he disputed, and that there were no factual allegations that he wished to correct. (Id. at 30.) Petitioner's responses to the Court's plea colloquy revealed that he understood the charges against him, and that he was voluntarily entering a plea of guilty to a crime that involved criminal intent.

Generally, a voluntary and intelligent guilty plea made by an accused who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984). Petitioner's assertion that his attorneys did not explain to him the element of intent in the mail fraud charge to which he pleaded guilty are not sufficient to convince the Court that he received ineffective assistance of counsel or that he did not voluntarily and knowingly enter a guilty plea. The Court is satisfied that a sophisticated criminal defendant such as Petitioner would understand that he was entering a plea of guilty to a crime that involved an element of intent, where the criminal information contained words such as "Ponzi scheme," "scheme to defraud," and "false and fraudulent pretenses." (Doc. No. 16 at 4.) Under Strickland, Petitioner bears the burden of producing some evidence in support of a finding that he suffered prejudice as a result of his counsel's allegedly deficient representation. As noted above, Petitioner has offered nothing more than his bare allegations that if his attorneys had done more, he would not have pleaded guilty. Petitioner has failed to meet his burden; thus, the Court will deny his Section 2255 motion with respect to his argument that his counsel was ineffective for failing to explain the elements of the mail fraud offense to him.

V. **CERTIFICATE OF APPEALABILITY**

In proceedings brought under 28 U.S.C. § 2255, a petitioner cannot appeal to the circuit

court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. A COA will not issue in this case.

## VI.    CONCLUSION

Petitioner argues that his attorneys were ineffective because they failed to properly investigate any potential defenses and because they failed to explain to him the elements of the mail fraud charge to which he pleaded guilty. However, Petitioner has not satisfied the Court that his counsel's conduct fell below an objectively reasonable standard, and he has presented no evidence in support of a finding that he suffered prejudice as a result of his attorneys' allegedly deficient representation. Therefore, the Court will deny his Section 2255 motion to vacate his conviction and sentence.

An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | No. 1:07-cr-450 |
| v. | : | |
| | : | (Chief Judge Kane) |
| **WESLEY A. SNYDER,** | : | |
| Petitioner | : | |

## ORDER

**AND NOW**, this 25th day of January 2013, upon consideration of Petitioner's motion to vacate (Doc. No. 44), and for the reasons more fully set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Petitioner's motion to vacate is **DENIED**.

A certificate of appealability shall not issue.

The Clerk of Court is directed to close this case.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania
